# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **STS ENERGY PARTNERS LP** | ) | |
| 26 Buttonwood Drive | ) | |
| Exton, PA 19341 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-591 |
| | ) | |
| **FEDERAL ENERGY REGULATORY** | ) | |
| **COMMISSION** | ) | |
| 888 First Street NE | | |
| Washington, D.C. 20426 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff STS ENERGY PARTNERS LP ("STS") for its complaint against defendant

UNITED STATES FEDERAL ENERGY REGULATORY COMMISSION ("FERC" or "the

Commission"), alleges as follows:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

to compel production under a pair of FOIA requests seeking certain FERC records.

2. The first request (FOIA 2013-96) seeks certain records relating to the FERC Office

of Enforcement's 2010-2012 investigation of Oceanside Power LLC and Robert Scavo.

That request is referred to herein as the Oceanside FOIA Request.

3. The second request (FOIA 2014-08) relates to FERC's decision in March 2008 to

issue an Order Denying Complaint in *Black Oak Energy LLC, et al. v. PJM*

*Interconnection LLC* (the "Black Oak Order I"), and the subsequent September 2009 reversal in an Order Accepting Compliance Filing in *Black Oak Energy LLC, et al. v. PJM Interconnection LLC* (the "Black Oak Order II").  That request is referred to herein as the Black Oak FOIA Request.

4.     Defendant categorically denied both requests, under exemptions 7(a) and 5 respectively, withholding all responsive records, in full, making no effort to release redacted or segregable information despite its obligation to do so.

5.     These FOIA requests seek information shining light on FERC's recent and punitive efforts against small power market traders for engaging in legal and indeed ubiquitous activity in the PJM Interconnection ("PJM") wholesale electricity market, by alleging market manipulation, and in an inconsistent manner creating great confusion for traders.

**<u>SUBJECT MATTER AND REQUEST BACKGROUND</u>**

6.     PJM Interconnection LLC is an organization that that operates a large electrical grid and coordinates transactions for wholesale electrical service on that grid in all or parts of Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and the District of Columbia.  Acting as a neutral, independent party, PJM operates a competitive wholesale electricity market and manages the high-voltage electricity.  It is subject to FERC regulation. Approximately 40 percent of PJM buy-sell transactions are made by arbitrageurs who speculate that they can profit by purchasing electricity a day ahead of its actual need at a price lower than the final market price on the following day when the electricity is actually used.  This activity provides liquidity to the power markets.  Because

some electricity must be physically transmitted over long distances, a portion of the electricity is physically lost during the transmission because of friction.  This is a transmission line loss and is calculated as the losses associated with the most distant transmission.  Thus, a market transaction may require the buyer to pay the electricity generator for 105 megawatts of power while only receiving 100 megawatts, 5 megawatts having been physically lost during transmission.  An arbitrageur who purchases the day before the final market transaction also pays this extra amount.  The amount of transmission line loss is a function of the distance between the electricity generator and the final end user.  If the distance between generator and user for the last (marginal) trade is smaller than the previous-day trades assumed, the line losses are smaller as well.  This results in greater than expected payment for line losses.  This extra payment creates a surplus and PJM may not keep that surplus but instead must allocate it back to electricity buyers.  This allocation is the Marginal Loss Surplus Allocation ("MLSA").  The question before the Commission in the Black Oak orders was as to how PJM should allocate the MLSA.

7.     Up-To Congestion transactions were created as a mechanism to provide some price certainty in the day-ahead energy market. Customers can specify how much they are willing to pay for congestion between a transaction source and sink.  If the congestion charges are up to or less than the specified amount, then the transaction is scheduled.

8.     The requested records in the Oceanside FOIA request specifically relate to a FERC investigation into and subsequent settlement with Oceanside and Scavo.  That investigation focused on certain Up-to-Congestion ("UTC") trading patterns by Oceanside

and Scavo in the PJM Interconnection[1] market.  The investigation was docketed under

FERC Docket No. 10-5-000 (the "Oceanside UTC Investigation").  This docket also

involves several entities in addition to Oceanside and Scavo, though FERC does not allege

that any of the entities involved in the investigation acted in concert or relationship.

9.     FERC's Office of Enforcement commenced its investigation into Oceanside and

Scavo in August 2010 and issued a Staff Notice of Alleged Violations in December 2012.

In February 2013, FERC reached a settlement with Oceanside and Scavo.

10.    During the course of the investigation FERC communicated with outside entities

regarding the investigation.

11.    After FERC concluded its investigation into Oceanside and Scavo, and publicly

approved the settlement, plaintiff submitted the Oceanside FOIA Request seeking

information regarding the Oceanside and Scavo investigation.

12.    FERC refused to release any portion of any the 41 responsive Oceanside records

sought by plaintiff in the Oceanside FOIA Request, arguing that to do so would reveal the

scope and direction of a pending investigation.

13.     This categorical denial came notwithstanding that FERC had already reached a

settlement with Oceanside and Scavo.  FERC cited FOIA exemption 7(A) which protects

information related to ongoing law enforcement proceedings.  FERC claimed that

disclosure might reveal the direction and scope of other investigations.

14.    The records requested in the Black Oak FOIA Request relate to the decision by

FERC in March 2008 to issue Black Oak Order I, and its reversal in Black Oak Order II,

---

[1]

both concerning PJM's allocation of the surplus of what are called marginal transmission line loss payments.

15.    Prior to the initial complaint filed in the Black Oak Proceeding, PJM did not allocate a portion of the MLSA to Up-To Congestion (UTC) traders. Black Oak Energy, along with other UTC market participants, challenged PJM's allocation method, seeking *inter alia* an order from the Commission requiring PJM to allocate a portion of the MLSA to UTC traders.

16.    In Black Oak Order I, the Commission affirmed PJM's method of not providing MLSA to UTC traders, on the basis that such an allocation "may result in arbitrageurs making trades that would not be profitable based solely on price differentials alone" (the "UTC Arbitrage Principle").  *See* Black Oak Order I, 122 FERC 61, 208 at p. 51.

17.    One year later, in September 2009, the Commission <u>reversed</u> its position on the UTC Arbitrage Principle by approving a revision to PJM's tariff whereby UTC traders were included in the MLSA.  *See* Black Oak Order II, 128 FERC 61, 262 at p. 23.

18.    Subsequent to the Black Oak orders, FERC ordered an investigation into certain trades that were, in part, influenced by the MLSA payments.  Oceanside and Scavo, among others, were targeted and eventually agreed to settle the resulting enforcement action, without admitting guilt.

19.    Requesters submitted the Black Oak FOIA Request seeking documents related to the reversal of position at FERC.  In its initial determination, however, FERC issued a categorical denial to the request, withholding all responsive information under FOIA exemption 5, and claiming that no record contained any segregable information.

20.    Transparency in government is the subject of high-profile vows by the President and Attorney General that FOIA will "be administered with a clear presumption: In the face of doubt, openness prevails" (*See* Attorney General Eric Holder, *OIP Guidance, President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines, Creating a "New Era of Open Government"*, www.justice.gov/ oip/foiapost/ 2009foiapost8.htm; *Memorandum for the Heads of Executive Departments*, www.whitehouse.gov/the_press_office/Freedom_of_Information_Act.)

21.    Accordingly, plaintiff files this lawsuit to compel FERC to comply with the law.

**PARTIES**

22.    STS Energy Partners LP is a private investment partnership organized under Delaware law.  STS has traded in the PJM UTC market and desires to participate in the UTC market again.

23.    Defendant Federal Energy Regulatory Commission (FERC) is an independent federal agency headquartered in Washington, D.C. with regulatory jurisdiction over, *inter alia,* interstate electricity sales, wholesale electric rates and natural gas pricing whose stated mission is to "assist consumers in obtaining reliable, efficient and sustainable energy services at a reasonable cost through appropriate regulatory and market means."

**JURISDICTION AND VENUE**

24.    This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

25.    Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because defendant FERC is a federal agency operating in the District of Columbia and a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

**Plaintiff's FOIA Request FY13-96 Seeking Certain Described Commission Records**

26.    On September 24, 2013, plaintiff submitted a FOIA Request by regular mail to Leonard Tao, Director of the Office of External Affairs at FERC seeking:

1. Non-privileged documents evidencing, memorializing or relating to intra-agency communications by and between FERC employees and/or FERC Commissioners concerning FERC's investigation into, and enforcement action against, Oceanside Power LLC and Robert Scavo (Docket No. INI0-5-000).

2. Non-privileged documents evidencing, memorializing or relating to communications between FERC employees and the representatives of Oceanside Power LLC and Robert Scavo concerning FERC's investigation into, and enforcement action against, Oceanside Power LLC and Robert Scavo (Docket No. IN10-5-000).

3. Non-privileged documents evidencing, memorializing or relating to communications between FERC and PJM Interconnection LLC, PJM Settlement, Inc. and any other PJM affiliate, concerning FERC's investigation into, and enforcement action against, Oceanside Power LLC and Robert Scavo (Docket No. INl0-5-000).

4. Non-privileged documents evidencing, memorializing or relating to communications between FERC and Dr. Joseph Bowring and/or any employee or representative of Dr. Joseph Bowring's firm Monitoring Analytics LLC, concerning FERC's investigation into, and enforcement action against, Oceanside Power LLC and Robert Scavo (Docket No. INl0-5-000).

27.    FERC assigned this FOIA request identification number FY13-96.

28.    On November 15, 2013, FERC issued its initial determination, denying this request and withholding each of the 41 responsive records it identified, in their entirety, on the grounds that each of them:

could cause substantial harm to ongoing enforcement activities of the
Commission. The withheld information includes data being used in an ongoing
investigation, Docket No. IN10-5-000.  Disclosure of that information at this time
could adversely impact the Commission's ability to continue to conduct a
thorough non-public investigation.

29.     Plaintiff administratively appealed this initial determination on November 20,

2013, pointing out that FERC's investigation into Oceanside would not interfere with other

investigations because Oceanside's conduct was separate and distinct from the behavior of

other traders in the UTC market.  Also, defendant's docket revealed these activities were

not related to others being investigated.  Plaintiff explained that the direction and scope of

FERC's investigations into PJM trading was already revealed by the Staff Notice of

Alleged Violations and the public settlement with Oceanside.  Plaintiff further noted that

the nature of trading in the PJM market required transparency such that the identities of all

participants in disputed UTC trades were already known.

30.     Defendant denied this administrative appeal on January 10, 2014, upholding the

FERC Director's initial determination that all documents were subject to FOIA exemption

7(A) and withholding all responsive records, in full.

31.     As such, plaintiff has exhausted the administrative process and is now entitled to

seek relief from this Court.

**Plaintiff's FOIA Request FY14-08 Seeking Certain Described Commission Records**

32.     On October 30, 2013, plaintiff submitted a FOIA Request by regular mail to

Leonard Tao, Director of the Office of External Affairs at FERC seeking:

1.  Internal agency documents prepared by the FERC's staff analyzing the issues
    addressed by the FERC in the Black Oak Order I and the Black Oak Order II.

2. Documents prepared by the FERC's Office of Energy Market Regulation ("OEMR") or other FERC department or staff, analyzing or discussing the concept found in paragraph 51 of the Black Oak Order I that paying excess loss charges to arbitrageurs may result in arbitrageurs making "trades that would not be profitable based solely on price differentials alone."  *See* Black Oak Order I 122 FERC 61,208 at P 51.

3. Documents prepared by the FERC's OEMR, or other FERC departments or staff, analyzing or discussing the FERC's decision to reverse Black Oak Order I and hold that PJM is required to pay arbitrageurs a proportionate share of line loss surpluses related to virtual trading.

4. Documents prepared by the FERC's OEMR, or other FERC departments or staff, in preparation of issuing Black Oak Order II that analyze or discuss the FERC's conclusion in paragraph 51 of Black Oak Order I that paying excess Joss charges may influence arbitrageurs virtual trades, and the ultimate effect of the FERC's decision in Black Oak II on that concept.

33.   FERC assigned this FOIA request identification number FY14-08.

34.   On November 26, 2013 FERC issued its initial determination categorically denying access to any information in the 294 responsive records it identified, on the basis of the deliberative process privilege under 5 U.S.C. § 552(b)(5).  FERC claimed that no information could be released because there was no segregable nonexempt material.

35.   Plaintiff administratively appealed this initial determination on December 11, 2013.

36.   Defendant denied this appeal on January 27, 2014, claiming again that all responsive information, including even the dates, "Subject" lines and To:/From: lines of emails fell under FOIA exemption 5 and that there was no segregable material.

37.   As such, plaintiff has exhausted the administrative process and is now entitled to seek relief from this Court.

## **LEGAL ARGUMENT**

38.   Exemption 7(A) requires the government perform a two-step analysis and three necessary tasks.

39.     The analysis must focus on (1) whether a law enforcement proceeding is pending

or prospective, and (2) whether release of information about it could reasonably be

expected to cause some articulable harm. See *NLRB v. Robbins Tire & Rubber Co.*, 437

U.S. 214, 224 (1978) (holding that government must show how records "would interfere

with a pending enforcement proceeding").  It is well established that in order to satisfy the

"pending/prospective" requirement of Exemption 7(A), an agency must be able to point to

a specific pending or contemplated law enforcement proceeding. See *Mapother v. DOJ*, 3

F.3d 1533, 1542 (D.C. Cir. 1993).  As the court in *Badran v. DOJ*, observed, "[i]f an

agency could withhold information whenever it could imagine circumstances where the

information might have some bearing on some hypothetical enforcement proceeding, the

FOIA would be meaningless." 652 F. Supp. 1437, 1440 (N.D. Ill. 1987).  Accordingly, the

courts have held that the two-part test requires more than the more pendency of

enforcement proceedings for the invocation of Exemption 7(A); the government must also

establish that some distinct harm could reasonably be expected to result if the record or

information requested were disclosed. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106,

1113-14 (D.C. Cir. 2007).

40.     Exemption 7(A) is temporal in nature and is not intended to "endlessly protect

material simply because it [is] in an investigatory file." *Solar Sources, Inc. v. United*

*States*, 142 F.3d 1033, 1037 (7th Cir. 1998) (stating that "Exemption 7(A) does not permit

the Government to withhold all information merely because that information was compiled

for law enforcement purposes"); *and see Robbins Tire*, 437 U.S. 214, 230–32 (1978); *see*

*also North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989) ("Disclosure of the information

[the requester] seeks cannot interfere with parts of the enforcement proceeding already concluded.").  To justify withholding, FERC must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted); *and see Barney v. IRS*, 618 F.2d 1271, 1273-74 (8th Cir. 1980) (explaining that 5 U.S.C. § 552(b)(7)(A) exempts from disclosure investigatory records compiled for law enforcement purposes, *but only* to the extent that the production of such records would interfere with enforcement proceedings).  Plaintiff argues that release of the records can no longer interfere with enforcement proceedings.

41.    Exemption 7(A) protects information related to ongoing law enforcement proceedings.  FERC's Oceanside investigation concluded in settlement prior to plaintiff submitting its Oceanside request.  FERC categorically denied all information in all records.

42.    The FERC investigation order and the settlement agreement fully describe the scope and direction of the three-year investigation.  Because the investigation is mature and all possible targets have already provided FERC investigators all information necessary to prosecute violations, there is no longer any need to keep communications between FERC and Oceanside secret as the release of those communications cannot reveal the scope and direction of a pending investigation in light of that scope and direction having already been made public.

43.    When an agency uses exemption 7(A) to give a categorical denial of a FOIA request it "has a three-fold task.  First, it must define its categories functionally.  Second, it

must conduct a document-by-document review in order to assign the documents to the

proper category. Finally, it must explain to the court *how* the release of each category

would interfere with enforcement proceedings." *Bevis v. Dep't of State*, 801 F.2d 1386,

1389-90 (D.C. Cir. 1986) *and see Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114

(D.C. Cir. 2007); *and Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265

(D.C. Cir. 1982).

44.     FERC claimed that disclosure of Oceanside records might reveal the direction and

scope of other investigations.  A bare claim that an investigation is occurring is insufficient

to justify a categorical denial of a FOIA request under exemption 7(A).  It is black letter

law that an agency cannot rely on "boilerplate" privilege claims, provide "identical

justifications" for withholding each of a series of withheld documents, or simply recite that

the withheld document meets statutory standards for withholding.  *See, e.g., King v. United

States Dep't of Justice*, 830 F.2d 210, 219–25 (D.C.Cir.1987); *Wiener v. FBI*, 943 F.2d.

972, 977–79 (9th Cir. 1991). Further it is not sufficient for the agency to simply assert that

disclosure will interfere with enforcement proceedings; "it must rather demonstrate *how*

disclosure" will do so. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*,

No. 1:11-cv-00592 (D.C. Cir. 2014) (*emphasis added*); *and see, Muttitt v. Department of

State*, 926 F.Supp.2d 284, 307 (D.D.C. 2013) ("It is insufficient for the [agency] to

substitute a string of buzz-word adjectives . . . in the place of a meaningful description of

the factual context surrounding a document.")

45.     FERC, having claimed only exemption 7(A) as a basis for withholding the 41

responsive documents in both the initial FOIA determination and its denial of the appeal, is

bound by that finding. *Friends of the Coast Fork v. U.S. Dept. of the Interior*, 110 F.3d 53, 55 (9th. Cir 1997) ("Taken together, these principles lead us to the following conclusion: on judicial review, the agency must stand on whatever reasons for denial it gave in the administrative proceeding.").

46.     In like measure, under the Black Oak FOIA, FERC failed to provide segregable information or justify that failure.  This, FERC cannot do.  For example, FERC should have provided the portions of emails showing "From", "To", "Date" and "Subject" data – information that allows the public to know who within the agency was participating in the decision-making process – facts that cannot reveal deliberative process information or advice, but which allow the public to know whether individuals with previously stated biases were involved in the decision-making.

47.     Under FOIA, a requester need not demonstrate that the records would contain any particular evidence, such as of misconduct**.**  Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, period. *See Judicial Watch v. Rosotti*, 326 F. 3d 1309, 1314 (D.C. Cir. 2003).

48.     Nor did FERC redact the documents so that the public could understand what the working law of the Commission was, what in that law was changed and the reasons for the changes.  *See*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-153 (1975) ("the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working

law' of the agency and have been held by the lower courts to be outside the protection of Exemption 5." (citations omitted)).

49.    An agency cannot simply claim there is no segregable material and categorically withhold under the deliberative process privilege.  It must make an effort to redact privileged information and release all other information. *See, People of California v. E.P.A.*, 2008 WL 5384623, *22 (N.D. Cal. Dec. 22, 2008) (agency cannot rely on the conclusory claims about the "deliberative, pre-decisional character of the documents," but instead must provide "specific information to determine whether the documents are deliberative and pre-decisional, whether any facts or selection of facts would reveal the agency's deliberative process, or whether factual material is reasonably segregable").

50.    Further an agency must release factual information that may have been used in deliberative discussions since "the privilege applies only to the 'opinion' or 'recommendatory' portion of the report, not to factual information which is contained in the document." *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980.  In addition to the email header information and any statements of working law or the reasons for the working law changes, the deliberative process privilege does not apply to other factual materials such as research or surveys relied upon in agency recommendations. *See Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1976) (survey results cannot be protected where they merely "provide the raw data upon which decisions can be made"); *Rashid v. HHS*, No. 98-098, Slip Op. at 13-14 (D.D.C. March 2, 2000) ("The results of research are factual and not deliberative information").  "The government must show with reasonable specificity why a document cannot be further segregated."

*Marshall v. F.B.I.*, 802 F.Supp.2d 125, 135 (D.D.C. 2011); *see Quinon v. FBI*, 806 F.3d 1222, 1227 (D.C. Cir. 1996) ("reasonable specificity" required). *API v. EPA*, 846 F.Supp. 83, 90-91 (D.D.C. 1994); *see also Information Network for Responsible Min. v. B.L.M.,* 611 F.Supp.2d 1178, 1189 (D. Colo. 2009) (court would not accept "conclusory assurance given by the [agency] that any factual or otherwise non-exempt material contained in its agency records is nonsegregable and privileged from disclosure"). FERC has done nothing of the kind.

### FIRST CLAIM FOR RELIEF
**Duty to Release Certain Described Records FOIA No. FY13-96 and No. FY14-08 -- Declaratory Judgment**

51.    Plaintiff re-alleges paragraphs 1-50 as if fully set out herein.

52.    FOIA requires that covered agencies provide records responsive to legitimate requests reasonably describing desired records, subject to one of nine enumerated exemptions.

53.    Defendant FERC is a covered agency.

54.    Plaintiff has sought and been denied production of responsive records reflecting the conduct of official business.

55.    Plaintiff has a statutory right to the information it seeks.

56.    Defendant failed to provide plaintiff with responsive records.

57.    FOIA requires all doubts to be resolved in favor of disclosure. It allows the citizenry to learn "what their government is up to." *NRA v. Favish* 541 U.S. 157, 171 (quoting *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989)). The act is designed to "pierce the veil of administrative secrecy and

to open agency action to the light of scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

58.    Plaintiff has exhausted the administrative process and has no requirement to further pursue administrative remedies.

59.    The requested records are of great and timely public interest.

60.    Plaintiff asks this Court to enter a judgment declaring that:

   i.    FERC correspondence as specifically described in plaintiff's requests FY13-96 and FY14-08, and any attachments thereto, are public records, and as such,are subject to release under FOIA subject to legitimate withholdings;

   ii.    FERC's denial of plaintiff's FOIA request seeking the described records is not reasonable, and does not satisfy FERC's obligations under FOIA;

   iii.    FERC's refusal to produce requested, non-exempt information is unlawful; and

   iv.    FERC must release those requested records or segregable portions thereof.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Duty to Release Certain Described Records FOIA No. FY13-96 and No. FY14-08 -- Injunctive Relief**

61.    Plaintiff re-alleges paragraphs 1-60 as if fully set out herein.

62.    Plaintiff is entitled to injunctive relief compelling defendant to produce all records in its possession responsive to plaintiff's FOIA request, subject to legitimate withholdings.

63.    Plaintiff asks this Court to enter an injunction ordering the defendant to produce to plaintiff, within 10 business days of the date of the order, the requested records described

in plaintiff's request FOIA No. FY13-96, and No. FY14-08 and any attachments thereto, subject to decisions of the Court.

### **THIRD CLAIM FOR RELIEF**
### **Costs and Fees – Injunctive Relief**

64.    Plaintiff re-alleges paragraphs 1-63 as if fully set out herein.

65.    Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

66.    Plaintiff has a statutory right to the records that they seek; defendant has not fulfilled its statutory obligations to provide the records or a proper response; there is no legal basis for its withholding all responsive records in their entirety; and, in light a judgment finding violation of FOIA, plaintiff will have substantially prevailed.

67.    Plaintiff asks the Court to enter an injunction ordering the defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case if it has substantially prevailed.


WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for their attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 10th day of April, 2014,

**STS ENERGY PARTNERS LP**

By Counsel

The Free Market Environmental Law Clinic

_____/s/_____
Christopher C. Horner
D.C. Bar No. 440107
1489 Kinross Lane
Keswick, VA 22947
(202) 262-4458
CHornerLaw@aol.com

David W. Schnare
D.C. Bar No. 1015635
9033 Brook Ford Rd.
Burke, VA 22015
571-243-7975
Schnare@FMELawClinic.org

ATTORNEYS FOR PLAINTIFF