UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| STS ENERGY PARTNERS LP,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>    Defendant. | Civil Action No. 14-591 (JDB) |

## MEMORANDUM OPINION

The Freedom of Information Act generally obliges federal agencies to release all records (or portions of records) responsive to proper FOIA requests. But like most general rules, it comes with exceptions—or, more precisely, "exemptions." If the federal agency can show that otherwise responsive information falls within one of nine exemptions from the usual FOIA requirements, the agency need not disclose the information. See 5 U.S.C. § 552(b). This case involves the application of three such statutory carve-outs (Exemptions 4, 5, and 7) to 142 documents. Plaintiff STS Energy Partners wants access to these records—which concern Federal Energy Regulatory Commission ("FERC") activities surrounding two energy investment companies—and FERC has thus far refused to provide that access. Both parties have moved for summary judgment.[1] But on this record and at this stage of the litigation, summary judgment—for either side—is not yet appropriate. The Court will therefore deny the parties' cross-motions, and will require the government to supplement its withholding justifications before resubmitting any future summary-judgment motion.

---

[1] See Gov't's Mot. for Summ. J. [ECF No. 15] ("Gov't's Mot."); Pl.'s Mot. to Strike Gov't's Mot. & Cross-Mot. for Summ. J. [ECF No. 17] ("Pl.'s Cross-Mot."); Gov't's Reply & Opp'n to Pl.'s Cross-Mot [ECF No. 20] ("Gov't's Reply"); Pl.'s Reply to Gov't's Reply [ECF No. 22] ("Pl.'s Reply").

**BACKGROUND**

STS Energy "is a private investment partnership" that buys and sells electricity in the East Coast and Midwest energy markets, and FERC is the federal agency responsible for regulating those markets. Compl. [ECF No. 1] at 6. Hoping for insight into FERC's regulatory practices, STS Energy submitted two FOIA requests to the agency—one in 2013, and one in 2014. The first sought "certain records relating to the FERC Office of Enforcement's . . . investigation of Oceanside Power LLC," another energy trader. Id. at 1, 3–4. The second sought documents "relat[ing] to FERC's decision . . . to issue an Order Denying Complaint in Black Oak Energy LLC, et al. v. PJM Interconnections LLC . . . , and the subsequent . . . reversal [of that decision] in an Order Accepting Compliance Filing." Id. at 1–2.

FERC at first answered STS Energy's two requests with blanket denials. It refused to release any portion of the 41 documents the agency uncovered that responded to the Oceanside request, and it likewise withheld every line of the 294 documents related to the Commission's Black Oak decisions. Id. at 7, 9. But FERC has recently softened its stance and has released several documents to STS Energy. See, e.g., Gov't's Mot. at 7 (noting that FERC produced some documents because they "ha[d] been made publicly available or did not contain [exempt] information"); id. at 12 (noting release of other documents for similar reasons). STS Energy has also done its part to narrow the scope of this dispute. In its cross-motion for summary judgment, the firm now concedes that it seeks only 142 documents from FERC.[2] Pl.'s Cross-Mot. at 3. The result of these compromises:  142 documents remain in dispute—16 concerning the Oceanside request, and 126 concerning the Black Oak request.

---

[2] The cross-motion actually lists 143 documents, but FERC has subsequently released one more of these contested records. See Notice of Supp. Release [ECF No. 23] at 1 (confirming release of document number 115). This release renders moot STS Energy's claim as to that document. See Newport Aeronautical Sales v. Dep't of Air Force, 684 F.3d 160, 164 (D.C. Cir. 2012).

2

**LEGAL STANDARD**

The question for the Court is whether—as a matter of law—any of these 142 contested documents must be released (or may instead be withheld) in whole or in part. "FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). And summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

It is the agency's burden to prove that it has complied with its obligations under FOIA. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). To determine whether an agency has carried its burden, the district court may rely on the agency's affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits or declarations are accorded "a presumption of good faith," though they must be "relatively detailed and non-conclusory." SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). When weighing this and other evidence in the record, the Court will review de novo the agency's determination that information requested through FOIA is subject to one of that statute's exemptions. See 5 U.S.C. § 552(a)(4)(A)(vii). And "[a]t all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

**DISCUSSION**

Before wading into the merits of this case, the Court must clear a little underbrush. STS Energy not only opposes the government's motion for summary judgment, it has also moved to strike that motion. See Pl.'s Cross-Mot. at 5. Its rationale: the government filed its summary-judgment motion one day <u>after</u> the Court's deadline for such motions, which means the motion was not properly before the Court—at least, not without a separate government motion asking the Court to extend its due date. See <u>id.</u> at 10 (citing <u>Smith v. Dist. of Columbia</u>, 430 F.3d 450, 457 (D.C. Cir. 2005)). But that rationale has been overcome by events. The government moved for an extension of time to file its summary-judgment motion <u>nunc pro tunc</u>, and this Court granted that motion. See Sept. 26, 2014 Minute Order. And when STS Energy asked for reconsideration of that decision, this Court denied the company's motion, finding that "[t]he four factors for excusable neglect weigh in favor of permitting the [government's single-day] extension." Sept. 29, 2014 Minute Order (citing <u>In re Vitamins Antitrust Class Actions</u>, 327 F.3d 1207, 1209 (D.C. Cir. 2003)). The Court will therefore deny as moot STS Energy's latest crack at a motion to strike. On to the merits, then.

**I. OCEANSIDE FOIA REQUEST**

FERC and STS Energy remain at odds over 16 documents uncovered as part of the agency's search for Oceanside-related information.[3] These documents (numbered 2 through 5 and 8 through 19 in FERC's <u>Vaughn</u> index) constitute Oceanside's responses to data requests lodged during a 2010 FERC investigation into that company's energy-trading activities. See Att. 2 to Notice [ECF No. 16-2] ("Oceanside Index") at 1–10. FERC claims that Exemptions 4 and 7(A) protect the entirety of these documents from disclosure. But the record

---

[3] The Court notes at the outset that STS Energy has not questioned the adequacy of FERC's search for documents—in regard to either the Oceanside FOIA request or the Black Oak FOIA request. See Pl.'s Reply at 5 n.1 ("Plaintiff does not challenge the adequacy of FERC's search for responsive records.").

is far from clear on this point.  Although the evidence suggests that Exemptions 4 and 7(A) likely protect at least <u>some</u> of the information contained in these 16 records, it is not yet beyond dispute that <u>all</u> of the information is immune from disclosure.

**A.  Exemption 4**

Exemption 4 protects material that is "commercial or financial information obtained from a person and [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  In this Circuit, "commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  <u>Nat'l Parks & Conservation Ass'n. v. Morton</u>, 498 F.2d 765, 770 (D.C. Cir. 1974).

A review of the record in this case suggests that Exemption 4 covers at least some of the information contained in these 16 documents.  In its <u>Vaughn</u> index, FERC explains that the documents "contain[] confidential information" and that "[r]elease of this information could cause substantial harm to the competitive position of Oceanside."  <u>See, e.g.</u>, Oceanside Index at 1.  And the agency has supplemented this (bare-bones) explanation with a declaration that offers considerably more detail.  The declaration explains that Oceanside submitted its responses to FERC's data requests involuntarily, and that "[r]eleasing this information may therefore have a chilling effect on the Agency's ability to investigate future subjects."  Att. 2 to Gov't's Mot. [ECF No. 15-2] ("Tao Decl.") at 10.  Moreover, the declaration makes clear that each of the documents contains "sensitive," "non-public information about Oceanside's staffing, trading and power scheduling practices," including its "trade activities," "labor costs," "profit margins," "market share," and "volume of sales"—all of which could cause Oceanside "substantial harm,"

5

if released. Id. at 10–11. This is precisely the kind of information that other courts have found to be protected under Exemption 4's commercial-information privilege, see, e.g., Nat'l Parks & Conservation Ass'n. v. Kleppe, 547 F.2d 673, 684 (D.C. Cir. 1976), and this Court likewise concludes that the exemption covers some portion of each disputed document here.

But that conclusion is only half of FERC's summary-judgment battle. Beyond showing that Exemption 4 applies to these contested documents, FERC must also prove that there is no "reasonably segregable" material in the withheld documents that can be released to the public. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt."); see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977) ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions"). FERC could have satisfied this burden by "provid[ing] a detailed justification for [the documents'] non-segregability," Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted)—but it failed to do so. The Oceanside Vaughn index is silent as to segregability, and the agency's declaration does not improve things. It says only that "[t]here is no additional segregable factual information that could be released without revealing protected information." Tao Decl. at 11. Such "conclusory statements" will not suffice. Mead Data Cent., 566 F.2d at 261; see also id. at 260 (rejecting affidavit which claimed only that "there 'were no factual portions . . . which could be reasonably segregated'" (alteration in original)). The Court must therefore deny FERC's motion for summary judgment and require the agency to either release any segregable portions of these 16 Oceanside-related documents or submit more specific information that justifies its decision to withhold the entirety of these documents.

Of course, neither party is fully satisfied with this outcome. STS Energy first argues that Exemption 4 should not apply to this information at all (let alone in part), because the commercial information FERC seeks to withhold relates to Oceanside's "illegal" market behavior. See Pl.'s Cross-Mot. at 10–12. But even accepting STS Energy's premise as true—that the pricing, staffing, and trading information produced by Oceanside in response to FERC's investigation reflects illegal Oceanside activities—it is well established that Exemption 4 applies to all "commercial" information, legal or not. See Pub. Citizen v. U.S. Dep't of Health & Human Servs., 975 F. Supp. 2d 81, 101 (D.D.C. 2013) ("[T]he term 'commercial' is not limited only to lawful activities but also extends more broadly to any type of activity bearing on commerce."); see also Watkins v. U.S. Bureau of Customs & Border Prot., 643 F.3d 1189, 1195 (9th Cir. 2011) (rejecting argument that "information contained in a Notice of Seizure is non-commercial just because it's likely . . . that the merchandise seized is counterfeit"). This argument therefore gets STS Energy nowhere.

For its part, FERC contends that it has carried its segregable-information burden, arguing that any "redaction or withholding [of these 16 documents] would . . . render the documents worthless." Gov't's Reply at 14. Of course, an agency need not release segregable information that amounts to "an essentially meaningless set of words and phrases." Mead Data Cent., 566 F.2d at 261; see also id. at 261 n.55 ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."). But that is not the case here—at least, not as far as the record shows. The record evidence contains exactly one entry regarding the segregability of these 16 documents: a declaration that baldly concludes that "[t]here is no additional segregable factual information that could be released without revealing

7

protected information." Tao Decl. at 11. FERC's explanation that any segregable information would be "worthless" or "meaningless" did not appear until the agency's reply brief in this case. But that is far too late. Legal arguments, after all, are not evidence. See Fromm v. MVM, Inc., 371 F. App'x 263, 270 (3rd Cir. 2010).

### B. Exemption 7(A)

FERC's case for across-the-board Exemption 7(A) coverage is similarly flawed. This exemption protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7). Exemption 7(A) applies where enforcement proceedings are "pending or reasonably anticipated," Mapother v. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis removed), and where those proceedings "would be jeopardized by the premature release" of agency information, Juarez v. Dep't of Justice, 518 F.3d 54, 59 (D.C. Cir. 2008).

Again, the record evidence makes plain that Exemption 7(A) covers much of the information contained in the 16 disputed Oceanside documents. For one thing, a FERC investigation is still pending. As the agency's declaration explains, "the material at issue contains information relating to the ongoing FERC investigation . . . in Docket No. IN10-5-000." Tao Decl. at 7 (emphasis added). And the declaration continues: "The Commission is currently investigating patterns of market manipulation associated with . . . transactions in [a certain portion of the energy] market." Id. (emphasis added). For another thing, FERC has adequately explained how disclosure of the requested information would jeopardize this investigation. "If released," the agency explains, "th[e] information could permit the subjects of the ongoing investigation to evade scrutiny," Tao Decl. at 7, because the information could "reveal the scope

8

and direction of the . . . investigation" and "allow other subjects of the . . . investigation undue insight into the Agency's confidential enforcement measures and strategies," id. at 8. These sworn-to explanations—relatively detailed as they are—come with a presumption of good faith, and STS Energy has presented no contrary evidence to undercut that presumption. See SafeCard Servs., 926 F.2d at 1200.

Exemption 7(A) therefore applies—at least, to some extent. Remember FOIA's additional mandate: that agencies release "[a]ny reasonably segregable portion of [an otherwise withheld] record." 5 U.S.C. § 552(b). FERC has given the Court no basis on which to conclude that the agency has satisfied this requirement.[4] As with Exemption 4, FERC provided just one declaration from just one FERC employee that includes just one sentence regarding segregability: "There is no additional segregable factual information that could be released without revealing protected information." Tao Decl. at 11. This justification is just as unsatisfactory in the Exemption 7 context as it is in the context of Exemption 4. See Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (remanding for segregability finding because "Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears"); Voinche v. FBI, 412 F. Supp. 2d 60, 69 (D.D.C. 2006) ("[T]he FBI . . . provided nothing but conclusory statements as to the impossibility of segregating any portions of the . . . material."). The Court thus denies the government's summary-judgment motion regarding Exemption 7(A), as well, which will allow FERC another chance to explain its no-segregable-information finding.

---

[4] Neither party has raised any argument concerning segregability and Exemption 7(A). STS Energy has not argued that segregable (i.e., non-Exemption 7(A)) material exists within the withheld documents, and FERC has likewise failed to lodge any claim that it met its segregability obligations regarding this exemption. But this changes nothing. Courts must address the segregability question on their own—they cannot "simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1210 (D.C. Cir. 1992), abrogated on other grounds by Milner v. Dep't of Navy, 562 U.S. 562 (2011) (internal quotation marks omitted).

STS Energy would prefer that the Court go further, but neither of its arguments is persuasive. First, the company contends that 7(A) does not apply here, because FERC has ended its litigation against Oceanside. The company therefore believes that FERC has no pending or prospective investigation on which to hang its Exemption 7 hat. See Pl.'s Cross-Mot. at 8–9. But this cuts the exemption far too thin. Exemption 7(A), by its terms, applies whenever production of law-enforcement information "could reasonably be expected to interfere with enforcement proceedings"—full stop. 5 U.S.C. § 552(b)(7). Hence, so long as "enforcement proceedings" continue against someone, it matters not that proceedings have ended against someone else. And courts have confirmed this reading of the statute. See, e.g., Solar Sources, Inc. v. United States, 142 F.3d 1033, 1040 (7th Cir. 1998) ("The fact that the Government has closed a particular investigation does not make it any less likely that disclosure . . . could . . . interfere with enforcement proceedings." (internal quotation marks omitted)); Hidalgo v. FBI, 541 F. Supp. 2d 250, 256 (D.D.C. 2008) ("An ongoing search for . . . unindicted fugitives satisfies [the Exemption 7(A)] standard."). It is therefore irrelevant in this case that FERC's investigation of Oceanside has come to a close. The investigation—writ large—continues, and that is enough under Exemption 7(A).

STS Energy persists that the agency's Exemption 7(A) claim should fail, because FERC is not really a law-enforcement agency and thus should not get the benefit of the doubt regarding its investigatory interests. See, e.g., Pl.'s Reply at 12 (citing Birch v. U.S. Postal Serv., 803 F.2d 1206 (D.C. Cir. 1986)). But this argument falls flat for two reasons. One: even Birch acknowledges that Executive Branch agencies with "mixed" law-enforcement and other functions can take advantage of Exemption 7. 803 F.2d at 1210. And FERC certainly meets that description. See 16 U.S.C. § 823b(a) ("The Commission shall monitor and investigate

10

compliance with each license and permit issued under this subchapter."); Pl.'s Reply at 12 ("FERC is a mixed administrative and enforcement agency."). And two: as Birch makes clear, the "crucial factor" in determining whether Exemption 7 applies is whether the claimed investigation is "an inquiry as to an identifiable . . . violation of law." 803 F.2d at 1210 (internal quotation marks omitted). There is no doubt that FERC's ongoing investigation satisfies this crucial factor here. See Tao Decl. at 7 ("The Commission is currently investigating patterns of market manipulation."). FERC therefore properly relied on Exemption 7(A) to protect some of—though perhaps not all of—the information in these 16 disputed documents.

## II. BLACK OAK FOIA REQUEST

The fate of the 16 Oceanside documents is therefore on hold. But what of the 126 remaining documents concerning FERC's Black Oak opinions? As with the Oceanside request, FERC has thus far refused to release any portion of these documents—not a word, line, paragraph, or page. This time, though, the agency claims that Exemption 5 protects the entirety of these records from public view.[5] However, the Court cannot grant FERC's summary-judgment motion on the current record—not where its Exemption 5 explanations lack the details typically required to garner judgment as a matter of law, and not where FERC has (again) failed to carry its segregability burden.

### A. Exemption 5

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 [therefore] incorporates the traditional privileges that the

---

[5] FERC's reply brief argues that Exemption 4 also protects two Black Oak documents from disclosure. See Gov't's Reply at 9–10. But this argument is now moot. STS Energy is not challenging the release of one of the documents, see Pl.'s Cross-Mot at 3 (declining to challenge withholding of document number 113), and FERC has voluntarily released the other, see Notice of Supp. Release at 1 (confirming release of document number 115).

11

Government could assert in civil litigation against a private litigant—including . . . the deliberative-process privilege—and excludes these privileged documents from FOIA's reach." Loving v. Dep't of Def., 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted). The deliberative-process privilege, in turn, "protects agency documents that are both predecisional and deliberative," Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006); that is to say, documents that are "generated before the adoption of an agency policy" and that "reflect[] the give-and-take of the consultative process," Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). It is, again, FERC's responsibility to establish that Exemption 5 and the deliberative-process privilege shield the 126 Black Oak documents from disclosure. See Judicial Watch, 449 F.3d at 146. But FERC has failed to fulfill that responsibility here, for several reasons.

To start, FERC has not provided the "detailed information about [its] decision-making process [that] is essential . . . to a fair determination of the agency's [deliberative-process] claims." Bristol-Meyers Co. v. Fed. Trade Comm'n, 598 F.2d 18, 28 n.20 (D.C. Cir. 1978); see also Coastal States Gas, 617 F.2d at 868 ("[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process."). In other words, to defeat STS Energy's FOIA claim, FERC must explain how the agency generally makes its decisions. Are opinions and recommendations from junior staff "one step of an established . . . process, which . . . result[s] in a formal opinion"? Coastal States Gas, 617 F.2d at 868. Are those opinions and recommendations ever adopted wholesale by the agency without additional review? See Bristol-Meyers, 598 F.2d at 28. Do junior and senior staff have the authority to "investigate and recommend, [while] only the [Commission] c[an] decide"? Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 185 (1975).

FERC has thus far failed to provide answers to questions like these, and until it does, this Court cannot grant the agency's summary-judgment motion.[6]

Moreover, even if FERC had provided some general description of its decision-making process, it has still left the Court blind as to the role each individual document played within that process. The Court, as a result, cannot yet determine whether any of the 126 Black Oak records are either "predecisional," "deliberative," or (as is required) both. Take the "predecisional" question first: "to approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed." Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (internal quotation marks omitted). This ought to be a straightforward task, but—for many documents—FERC has made this determination impossible. The agency's Vaughn index explains, for example, that document 171 captures "deliberations . . . concerning possible upcoming decisions and policies." Att. 3 to Notice [ECF No. 16-3] ("Black Oak Index") at 38. But "possible . . . decisions and policies" (in the plural, no less) looks more like scattershot than pinpointing. Similar problems abound in FERC's Vaughn index. See, e.g. id. at 25–26 (justifying withholding of documents 114, 116, and 117 because they represent "[i]nternal discussion[s] on a report and how it relates to a pending matter"); id. at 50 (justifying withholding of documents 233–36 because they include discussion of an energy company's "characterization of its market").

And the Vaughn index is equally unhelpful regarding the "deliberative" nature of many disputed documents. Before deciding whether a document is deliberative within the meaning of

---

[6] FERC's declaration is not entirely silent about the agency's structure and purpose. It does explain, after all, that "FERC is comprised of a Chairman and four Commissioners who serve five-year terms, and have an equal vote on regulatory matters." Tao Decl. at 3. But this submission says nothing about how the Chairman and Commissioners interact with FERC staff to reach their voting decisions. And without such information, "the Court cannot assess the role withheld information plays in the administrative process." Chesapeake Bay Found., Inc. v. U.S. Army Corp. of Eng'rs, 722 F. Supp. 2d 66, 76 (D.D.C. 2010) (internal quotation marks omitted).

13

Exemption 5, courts often require agencies to provide such information as the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document" or "the relative positions in the agency's chain of command occupied by the document's author and recipient." Senate of Puerto Rico, 823 F.2d at 586 (internal quotation marks omitted). But FERC's proffer is insufficient in this regard. For many documents, the author and recipient remain mysterious. See, e.g., Black Oak Index at 20 ("Discussion involves staff opinions and commentary"). For others, an author or recipient is identified, but FERC has provided no information regarding that person's authority. See, e.g., id. at 3 ("email from Michael Goldenberg to Samuel Sopper (copying David Meade)"). Details of this sort can make a difference in Exemption 5 cases, see Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (noting that opinions sent up the chain of command might be protected, while opinions sent down the chain of command might not be), and in the absence of such details, the Court cannot conclude that FERC deserves judgment as a matter of law.[7]

Nor does FERC's declaration change this conclusion. To be sure, declarations and a Vaughn index may work in tandem, with "the court validating the index because it tied each individual document to one or more exemptions, and the [agency's] declaration linked the substance of each exemption to the documents' common elements." Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (internal quotation marks omitted). But this tag-team effort only works to the extent "the declarations are specific enough to permit the court to tie an exemption's justification to particular information that was withheld," Chesapeake Bay Found., Inc. v. U.S.

---

[7] Admittedly, some of FERC's Vaughn index submissions come closer to the mark than others. For example, the index entry for document 13 explains that the document reflects "[d]iscussion and pre-decisional deliberation on policy between subordinates and superiors . . . . These memos are drafted by junior staff, sent to senior staff and detail the substance of draft orders that are sent to the Commissioners and Chairman for voting." Black Oak Index at 3. Reasonable minds could disagree about the sufficiency of justifications like this one. But summary judgment remains inappropriate even for such documents, because FERC has not yet shown that it has released "reasonably segregable portion[s]" of them. 5 U.S.C. § 552(b); see infra at 16–17.

14

Army Corps of Eng'rs, 677 F. Supp. 2d 101, 107 (D.D.C. 2009), and FERC's declaration does not do so. Instead, it simply describes several categories of withheld documents, calling some of the records "Policy Discussions Between Staff Members," calling others "Deliberative Memos from Junior Staff Members to Senior Staff Members," and calling still others "Draft Commission Orders." Tao Decl. at 14. But FERC has made no effort to sort specific documents from its Vaughn index into these categories,[8] and the Court is in no position to do this sorting work for the agency. Summary judgment therefore remains inappropriate.

FERC disagrees, arguing that the various disputed documents "are categorically deliberative in nature." Gov't's Reply at 6 (emphasis added). But there is no such thing. There are, of course, documents that usually are deliberative—"recommendations, draft documents, proposals, suggestions," and the like. Coastal States Gas, 617 F.2d at 866. But none of these types of documents are "categorically" protected from disclosure. After all, "[a] document's context [that is, not its label or category] is the sine qua non of the court's assessment of whether or not the document is predecisional and deliberative; indeed, . . . 'the deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process.'" Conservation Force v. Jewell, --- F. Supp. 2d ---, 2014 WL 4327949, at *9 (D.D.C. Sept. 2, 2014) (emphasis added) (quoting Coastal States Gas, 617 F.2d at 867). And here, FERC has not yet given the Court sufficient indicia of the deliberative context surrounding these documents to entitle the agency to summary judgment.

FERC persists that the "release of the withheld material would 'chill future staff discussion or cause public confusion by disclosing analysis that ultimately did not form part of

---

[8] FERC probably intended to link its declaration categories (and associated withholding explanations) to specific withheld documents. The "Deliberative Memos . . ." category includes the following sentence: "Many responsive documents (possible to provide numbers here?) consist of internal memoranda prepared by junior staff for senior staff review seeking deliberative commentary on prospective Commission Agenda items." Tao Decl. at 14 (parenthetical in original).

15

the final agency analysis released to the public.'" Gov't's Reply at 8 (quoting Tao Decl. at 13). Perhaps. But the parties can cross that bridge when they come to it. Certainly, many of the disputed documents exhibit the hallmarks of Exemption 5 information. But the Court is not yet requiring FERC to produce any part of these 126 documents. It is, instead, requiring the agency to provide more—and more specific—information regarding its decision to withhold these documents under Exemption 5. Without this additional information, the Court is left to guess at the exemption's applicability, and guessing is not the stuff of summary judgment.

### B. Segregability

Of course, even if FERC had provided a more detailed Vaughn index and declaration to justify its invocation of Exemption 5, a problem remains. For a third time, the segregability issue rears its head. As is (by now) familiar, it is the agency's burden to show that it has met all of its obligations under FOIA—including the obligation to release "[a]ny reasonably segregable portion of a record." 5 U.S.C. § 552(b). And FERC's third swing at a segregability explanation is no better than its first. The agency's declaration concludes (without any real detail) that "[f]actual portions of the withheld documents are inextricably intertwined with the deliberative matter," Tao Decl. at 13, and that "[t]here is no additional segregable factual information that could be released without revealing protected information," id. at 15. But this is inadequate in two respects. First, these statements are wholly conclusory (that is to say, they come with no additional detail or factual support), and conclusions, without more, will not cut it under FOIA. See, e.g., Charles v. Office of the Armed Forces Med. Exam'r, 935 F. Supp. 2d 86, 96 (D.D.C. 2013) (affidavit containing conclusory statement did not justify Exemption 5 withholding).

And second, it is not enough for FERC to say that "there is no . . . factual information" in the withheld documents that can be publicly released. Tao Decl. at 15 (emphasis added). To be

16

sure, courts often use the distinction between "fact" and "opinion" as a "rough guide to separate exempt from non-exempt material" under the deliberative-process privilege. Access Reports, 926 F.2d at 1195. But the distinction is an imperfect one. Indeed, some opinion information remains subject to release under FOIA. For example, a recommendation might not qualify for deliberative-process protection if it is later "adopted . . . as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States Gas, 617 F.2d at 866. Likewise, an opinion communicated by a senior manager to a junior employee might fall outside Exemption 5, because it "is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take." Access Reports, 926 F.2d at 1195. The upshot of all of this: FERC cannot wash its hands of the FOIA segregability requirement by simply reviewing the "factual information" in its withheld documents; it must, instead, examine the entirety of the documents—both fact and opinion—in its search for segregable material.

## CONCLUSION

The Court will therefore deny the various motions currently on the table: the parties' cross-motions for summary judgment and STS Energy's motion to strike the government's late-filed motion. Moreover, the Court will require FERC to provide additional, more specific information to justify its withholding of the 142 disputed documents in support of a renewed summary-judgment motion. A separate Order has issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: March 4, 2015