## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STS ENERGY PARTNERS LP,

      Plaintiff,

      v.

FEDERAL ENERGY REGULATORY
COMMISSION,

      Defendant.

Civil Action No. 14-591 (JDB)

## MEMORANDUM OPINION

Plaintiff STS Energy Partners LP (STS Energy) seeks an award of attorney's fees and costs incurred in pursuing a request to the Federal Energy Regulatory Commission (FERC) under the Freedom of Information Act, 5 U.S.C. § 552.  Upon consideration of the plaintiff's motion, the Government's opposition, the plaintiff's reply, and the record in this case, plaintiff's motion will be granted.

## BACKGROUND

STS Energy "is a private investment partnership" that buys and sells electricity in the East Coast and Midwest energy markets, and FERC is the federal agency responsible for regulating those markets.  Compl. [ECF No. 1] at ¶¶ 22–23.  Seeking to "shin[e] light on FERC's recent and punitive efforts against small power market traders for engaging in legal and ubiquitous activity in the PJM Interconnection ("PJM") wholesale electricity market," id. ¶ 6, STS Energy submitted two FOIA requests to FERC, id. ¶ 1.  The first sought "certain records relating to the FERC Office of Enforcement's . . . investigation of Oceanside Power LLC," another energy trader.  Id. ¶ 2.  The second sought documents "relat[ing] to FERC's decision . . . to issue an Order Denying Complaint in Black Oak Energy LLC, et al. v. PJM Interconnections LLC . . . , and the subsequent . . . reversal

[of that decision] in an Order Accepting Compliance Filing." Id. ¶ 3. FERC withheld the 41 documents it uncovered that responded to the Oceanside request, and it likewise withheld the 294 documents related to the Commission's Black Oak decisions. Id. ¶¶ 28, 34.

STS Energy then filed suit to obtain the release of the responsive information. Early in the litigation, FERC released several documents, and after the Court denied both parties' motions for summary judgment, FERC produced more records in whole or in part. On May 14, 2015, the parties reached an agreement regarding the remaining documents in dispute, bringing an end to the underlying FOIA litigation. However, the parties have been unable to reach an agreement on plaintiff's request for attorney's fees. Plaintiff's motion for such fees is now before the Court.

## ANALYSIS

"The Freedom of Information Act provides for the recovery of [reasonable] attorneys' fees in cases brought under its provisions where the complainant has 'substantially prevailed.'" Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric., 11 F.3d 211, 215 (D.C. Cir. 1993) (quoting 5 U.S.C. § 552(a)(4)(E)). Courts analyze this issue in two steps: first, eligibility, and second, entitlement. Id. at 216. Both parties agree that STS Energy is statutorily eligible for attorney's fees. See Def.'s Opp'n [ECF No. 35] at 5. Therefore the Court need only address plaintiff's entitlement to fees. That is, STS Energy "may" receive fees, but the Court must determine whether it "should." See Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011).

The D.C. Circuit has instructed this court "to consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992). The second and third factors—

commercial benefit and plaintiff's interest—"are closely related and often considered together." Id. at 1095.  Indeed, "the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage."  Davy v. CIA, 550 F.3d 1155, 1160 (D.C. Cir. 2008).  "The sifting of those criteria over the facts of a case is a matter of district court discretion," Tax Analysts, 965 F.2d at 1094, and "[n]o one factor is dispositive," Davy, 550 F.3d at 1159.

"The first factor assesses the public benefit derived from the case and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought."  Id.  Plaintiff argues that this factor favors its motion because

> [the released documents] substantially add to public knowledge of how FERC conducts enforcement in a critical energy market.  These documents show who important decision makers on the FERC team were and some of the types of data that were being discussed by FERC as it modified its enforcement practices to which the public had become accustomed and adapted.

Pls.' Mem. in Supp. of Mot. for Att'y's Fees [ECF No. 34-1] at 8.  As evidence of the public value of the information requested and released, petitioners cite articles from Forbes.com, the Wall Street Journal, and Law360.com that covered FERC enforcement actions.  FERC responds that there was minimal benefit to the public because the requested information is valuable—if at all—only "to those few individuals in the requester's position, i.e., energy traders interested in determining FERC's investigative techniques and enforcement postures."  Def.'s Opp'n [ECF No. 35] at 7. "Those are provincial concerns, not ones shared by the public at large," according to FERC.  Id.

In deciding whether released documents are of import or irrelevance to the public, courts often look to whether the litigation or released information has inspired media coverage or congressional attention.  See, e.g., Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F.

Supp. 2d 216, 234 (D.D.C. 2011) (citing news article and congressional hearings as evidence of public benefit); <u>Playboy Enters., Inc. v. U.S. Customs Serv.</u>, 959 F. Supp. 11, 16 (D.D.C. 1997) (considering the "degree of publicity" sparked by plaintiff's action).  The interest of reporters and legislators is indicative of whether "disclosures in this case have added to the body of public knowledge on this issue of public importance." <u>Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.</u>, 892 F. Supp. 2d 28, 51 (D.D.C. 2012); <u>cf.</u> <u>Campbell v. U.S. Dep't of Justice</u>, 164 F.3d 20, 36 (D.C. Cir. 1998).

Even before an answer was filed in this FOIA litigation, the Wall Street Journal wrote about "the investors at war with political power"—the investors being STS Energy partners Kevin and Richard Gates.  <u>See</u> Joseph Rago, Opinion, <u>The Investors at War with Political Power</u>, Wall Street Journal, May 2, 2014.[1]  Having been accused by FERC of profiting from sham trades, "[t]he brothers went public with an earth-scorching campaign against their treatment by [FERC.]"  <u>Id.</u>  The opinion piece noted that the two had already "released hundreds of pages of internal documents that aren't normally disclosed during an ongoing investigation . . . offer[ing] a rare glimpse into FERC's prosecutorial method and the workings of the larger regulatory state in the Obama era."  <u>Id.</u>  And the brothers intended to disclose more, having filed the FOIA requests at issue in this lawsuit.  <u>Id.</u>  This media coverage—even if drummed up by the litigants themselves—demonstrates significant public interest in this action.

Congressional interest in FERC's prosecutorial tactics soon followed.  Letter from Sen. Bob Casey to Gregory H. Friedman, Inspector Gen., U.S. Dep't. of Energy (July 18, 2014); Letter from Sens. Barasso and Collins to Gregory H. Friedman, Inspector Gen., U.S. Dep't of Energy (Sept. 12, 2014) (citing allegations that targets of FERC investigations were not receiving

---

[1] Available at http://www.wsj.com/articles/SB10001424052702304178104579533693554509288 [https://perma.cc/YFU9-C8GF].

appropriate due process).  Responding to those requests, the Inspector General at the Department

of Energy, of which FERC is a part, agreed to assess FERC's enforcement program.  Glen Boshart,

DOE Inspector General Agrees to Probe FERC's Enforcement Program, SNL Financial, Nov. 17,

2014.[2]   Likewise, some members of the House of Representatives Energy and Commerce

Committee considered a legislative package that would institute several changes to FERC's

enforcement procedures.   Michael Brooks, FERC Enforcement Process under Fire in House

Hearing, RTO Insider, June 5, 2015.[3]   A reporter wrote that the subcommittee hearing was in

response to the Gates brothers' accusations.  Id.

In light of these developments, it cannot be seriously contested that the FERC enforcement

actions that are the object of the underlying FOIA requests have been a matter of public debate.

And contrary to the government's position, the general public has shown an interest in the type of

documents sought by this litigation, that is, FERC's records concerning investigation and

enforcement action against commercial energy traders.  See Def.'s Opp'n. at 2.  Thus, the Court

holds that disclosures in this case have added to the body of public knowledge on an issue of public

importance.

"The second factor considers the commercial benefit to the plaintiff, while the third factor

considers the plaintiff's interest in the records."  Davy, 550 F.3d at 1160.  Together these factors

"assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's

fees."  Id. (quoting Tax Analysts, 965 F.2d at 1095).  Here, the plaintiff is a private investment

partnership that has traded in the energy market.  Pls.' Mem. at 10.  But its FOIA requests, it says,

were motivated not by its commercial interest but rather by the company partners' desire "to pursue

---

[2] Available at https://www.snl.com/InteractiveX/Article.aspx?cdid=A-29892628-12576 [https://perma.cc/DWE6-KG85].
[3] Available at https://www.rtoinsider.com/ferc-enforcement-house-hearing-15613/ [https://perma.cc/Q549-AJKV].

information confirming their beliefs regarding FERC's unjust behavior and the need for transparency." Id. at 11.

FERC is dubious.  In particular, FERC contends that STS Energy, while not technically the subject of records requested, is "deeply intertwined with the entities that FERC is investigating," including Powhatan Energy Fund, LLC.  Def.'s Opp'n at 9.  "[I]t is the records of those investigations that STS seeks."  Id.  As a result of those investigations, Powhatan Energy fund has been assessed a $16.8 million penalty for engaging in manipulative trading. The firm clearly has a private interest in the disclosure of records pertaining to that investigation.

STS Energy objects to FERC's attempt to tie it to Powhatan.  See Pl.'s Reply [ECF No. 36] at 9 ("[D]efendant's reasons as to why these separate firms should be lumped together are belied by the facts.").  But STS Energy's own materials contradict its attempt to distance itself from Powhatan.  Its memorandum in support of its motion for attorney's fees begins the story of this litigation with the actions of "Kevin and Richard Gates, [who] through their partnership, [STS], submitted a pair of [FOIA] requests."  Pl.'s Mem. [ECF No. 34-1] at 1.  "Here the owners of STS, the Gates brothers, used their partnership as the entity to pursue information confirming their beliefs regarding FERC's unjust behavior and the need for transparency."  Id. at 11.  And it is "the Gates brothers [who] have established a free electronic publication providing the interested public information it has obtained about FERC and its enforcement program."  Id. at 10.  That website is called ferclitigation.com—as in FERC v. Powhatan Energy Fund, LLC.  Id. at 11; see ferclitigation.com.  By STS Energy's own admission, then, it is the partnership of the Gates brothers.  And the articles, cited and provided by STS Energy as evidence of the litigation's public benefit, confirm that the Gates brothers are also the "brothers in the Powhatan Energy Fund investment partnership."  Aruna Viswanatha & Christopher M. Matthews, Regulators Tap

Prosecutors for Key Jobs, Wall Street Journal, Apr. 6, 2015.[4]  However, the Court need not go any further than STS Energy's own filings to find that STS Energy—that is, the Gates brothers—is deeply intertwined with Powhatan—also the Gates brothers.

In its reply brief, however, STS tries to coyly avoid FERC's accusation that it "has placed the material released from these requests" on ferclitigation.com by pointing to FERC's failure to attach a supporting exhibit showing that the materials in question are posted on the website.  See Pl.'s Reply at 11.  But, having already admitted that the Gates brothers established the website and published any information received from FERC via FOIA on the website, there is no need for more proof.

FERC builds on this overlap to argue that the FOIA requests by STS Energy were "litigation-oriented" and "part of Powhatan's litigation strategy."  Def.'s Opp'n at 10.  According to FERC, "Powhatan has been using STS to obtain through the FOIA materials it believes will allow it to challenge or avoid its liability for market manipulation, and it has used FOIA requests to circumvent the fact it has not been entitled to obtain discovery from FERC in the pending litigation."  Id. at 11.  Whether or not the FOIA requests were intended to substitute for discovery otherwise unavailable to Powhatan, the Court finds that they were at least part of Powhatan's litigation strategy including its litigation-driven public relations campaign.  As such, the Court finds that the plaintiff's interest in the documents was for its private gain.  See Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 712–13 (D.C. Cir. 1977); Stein v. U.S. Dep't of Justice, 662 F.2d 1245, 1263 (7th Cir. 1981); Menasha Corp. v. U.S. Dep't of Justice, No. 11-C-682, 2012 WL 1034933 at *5 (E.D. Wis. Mar. 26, 2012) (holding that defendants in an enforcement action had a "strong private incentive" to pursue the FOIA action to limit their liability).  Powhatan,

---

[4] Available at http://www.wsj.com/articles/regulators-tap-prosecutors-for-key-jobs-1428361038 [https://perma.cc/N47X-G3YW].

facing the possibility of millions of dollars in sanctions, undoubtedly had a private incentive to seek disclosure of the records related to its investigation.  The Gates brothers cannot hide behind the vehicle of another company to disclaim that private interest.  See Menasha Corp., 2012 WL 1034933 at *6 ("The fact that Plaintiffs were not requesting information pertaining to their own liability does not mean they did not have private interests in the information.").

The final element of the fee entitlement analysis concerns "whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Davy, 550 F.3d at 1162 (internal citations omitted).  FERC carries the burden of showing that it had a "colorable or reasonable basis for not disclosing the material until after [STS Energy] filed suit." Id. at 1163.  FERC defends its conduct as in "good faith" given its eventual release of records without a court order.  While the Court appreciates that the parties were ultimately able to resolve their dispute, FOIA's fee provision is intended to incentivize the government to "promptly turn over—before litigation is required—any documents that it ought not withhold."  Id. at 1165 (emphasis added).  That purpose is not served if the government can prevail on the reasonable basis factor by deciding—after court intervention—that withheld documents may be released.

Here, "FERC at first answered STS Energy's two requests with blanket denials.  It refused to release any portion of the 41 documents the agency uncovered that responded to the Oceanside request, and it likewise withheld every line of the 294 documents related to the Commission's Black Oak decisions."  Mem. Op. Mar. 4, 2015 [ECF No. 24] at 2.  It was only after STS filed suit that FERC "softened its stance and [] released several documents."  Id.  And it was only after the Court denied the parties' cross-motions for summary judgment that another 115 documents were released in whole or in part.  Pl.'s Mem. at 5–6.

Furthermore, in denying FERC's summary judgment motion, the Court highlighted FERC's conclusory approach to segregability.  Mem. Op. at 6, 9, 16–17.  FERC's failure to provide an adequate segregability analysis demonstrates some recalcitrance with the analysis that FOIA requires.  See Davy, 550 F.3d at 1166; Elec. Privacy Info. Ctr., 892 F. Supp. 2d at 53.  FERC responds by pointing to excerpts of the Court's summary judgment opinion, which indicated that the asserted FOIA exemptions would cover some portion of the withheld information.  True, but the Court could not discern which portions—which is why summary judgment was denied.  FERC has notably not argued that the material it ultimately disclosed was withheld for reasons that could withstand summary judgment.  Rather it "determined that portions of previously withheld records could be segregated and released."  Def.'s Opp'n at 4.  The Court thus finds that FERC's conclusory claim of unsegregability is not a "reasonable basis in law" for withholding in these circumstances.  Nor can FERC prevail on the reasonable basis factor by deciding to release documents only after forcing the requester to sue.  Davy, 550 F.3d at 1165.

Thus, the four factors point in conflicting directions.  The second and third factors counsel against granting STS Energy's motion for attorney's fees: STS Energy is a requester that "seek[s] documents for private advantage" and therefore may not need a strong incentive to litigate, and STS's pursuit of the documents has provided a significant public benefit and has overcome recalcitrant agency conduct.  Id. at 1160, 1163.  However, the first and fourth factors counsel in favor of granting STS Energy's motion: the public derived a benefit from the materials released in response to the litigation, and the agency did not have a reasonable basis for withholding the documents that it initially refused to release.  While "[n]o one factor is dispositive," given FERC's conduct, the fourth factor carries the greatest weight here.  See id. at 1158.

The D.C. Circuit has instructed that "[a] grudging application of [the fees] provision … would be clearly contrary to congressional intent." Id. (internal quotation marks omitted) (quoting Nationwide Bldg. Maint., Inc., 559 F.2d at 715).  As that court has explained, attorney's fees in FOIA cases serve two distinct purposes: encouraging FOIA suits that benefit the public, and compensating plaintiffs for "enduring an agency's unreasonable obduracy in refusing to comply" with FOIA's requirements. LaSalle Extension Univ. v. FTC, 627 F.2d 481, 484 (D.C. Cir. 1980). The former purpose is less salient here because plaintiff has a sufficient private commercial incentive to seek the requested information.  See id.  But the latter purpose is quite salient—and that can serve as sufficient justification for attorney's fees when the government displays some recalcitrance to release the requested documents or when its "withholding appear[s] to be merely to avoid embarrassment or to frustrate the requester."  See id. (internal quotation marks omitted) (quoting S. Rep. No. 854, 93d Cong., 2d Sess. (1974)).  As discussed above, FERC did show some recalcitrance and at least "appeared" to "withhold" the segregable portions of requested documents "merely to avoid embarrassment or frustrate the requester," or simply to avoid the time-consuming work of separating information that could be properly withheld from information that could not. See id.; Davy, 550 F.3d at 1165.  Thus, this factor counsels strongly in favor of granting the  motion for attorney's fees.  The Court therefore weighs this factor heavily, and when combined with the public benefit that the documents provided, determines that STS Energy's request for attorney's fees is justified.

## **CONCLUSION**

For all these reasons, the Court will grant STS Energy attorney's fees in the requested amount of $60,168.19.[5]  A separate order will be issued.

---

[5] Beyond arguing that STS Energy was not entitled to fess, FERC does not object to the claim for $60,168.19 and thus concedes that this figure is accurate and reasonable.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated: <u>October 5, 2016</u>